UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA PAULINE BROWNING,<br><br>       Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>       Defendant. | Case No.: 1:14-cv-1908-BAM<br><br>**ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Pauline Browning ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act.[1]  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.  Having carefully considered the parties' briefs, as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record and based upon proper legal standards.  Accordingly, the Court affirms the Commissioner's determination.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 5, 6).

1

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed an application for disability insurance benefits on October 3, 2011. AR 12. Plaintiff's application alleged disability beginning November 6, 2010. AR 12. The Commissioner initially denied Plaintiff's claims on February 16, 2012, and upon reconsideration on August 30, 2012. AR 12. Plaintiff filed a timely request for a hearing and on October 3, 2012, Plaintiff testified at the hearing. AR 12. On June 7, 2013, Administrative Law Judge ("ALJ") Daniel G. Heely denied Plaintiff's application. AR 25. After the Appeals Council denied review, this appeal followed. AR 1.

**Hearing Testimony**

At the administrative hearing before ALJ Heely on April 2, 2013, in Stockton, California, Plaintiff appeared and testified with the help of attorney, Jessica Cook. AR 43. Impartial Vocational Expert ("VE") Katie Macy Powers also appeared and testified. AR 43.

Plaintiff was fifty-seven years old at the time of her hearing. Plaintiff graduated from high school and later obtained a certificate as a nurse assistant, which was no longer valid. AR 47-48. She last worked as a housekeeper but stopped working altogether around November 6, 2010 due to a combination of physical and mental problems. AR 48- 49. Physically, she has pain in her low back that runs down her legs and into her feet. AR 49-50. She also has pain in her right shoulder and hip and arthritis pain in her fingers and hands. AR 50, 52. Plaintiff testified that a doctor told her she had fibromyalgia, but because that doctor was moving out of town, she did not continue her diagnostic workup. AR 52-53. She takes various prescribed medications, which make her "really sleepy;" after she takes them in the morning, she falls asleep again. AR 53. The medications also make her dizzy and disoriented. AR 53.

Her low back and hip pain usually wake her from sleep after about four hours, after which she gets up for about half an hour before going back to sleep for another two to three hours. AR 60-61. She also naps during the day for about two to three hours at a time. AR 61. Her back and hip pain limit how much she can lift or carry: her dog weighs about five pounds, and she sometimes has difficulty lifting or handling him due to his weight. AR 63. Plaintiff's fingers and hands swell and

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

hurt, which causes difficulty opening jars or even opening a twist-tie on a bread bag. AR 63-64. She can usually sit for half the duration of a 45-minute church session, after which she gets up before resuming sitting. AR 65-66.

With respect to her mental impairments, Plaintiff has a prescription for Zoloft from her primary care provider for depression. AR 53-54. Even though she takes it daily, she still cries "a lot," so she is unsure whether it is working. AR 54. She is not presently seeing a therapist or counselor for her depression, although she had in the past, while she was still working but was having problems getting "overwhelmed." AR 54, 67.

When asked about her daily activities, Plaintiff testified that she lives in a house with her husband and their two dogs. AR 54. Her husband works part-time and leaves the house for two to three hours in the mornings. AR 55. In a "normal kind of day," but not one where she is feeling "terrible," she makes simple meals such as toast or fruit or heating food in the microwave. AR 55. Her husband helps her do the laundry, clean the house, and care for their two small dogs. AR 55. She used to take the dogs for walks, but she cannot anymore. AR 56. She drives, but her husband prefers that she not drive because of her dizziness and drowsiness. AR 56. When Plaintiff does drive, she limits her drives to one hour a week, usually to visit her children, who live 20 minutes away. AR 56. Plaintiff rarely goes grocery shopping, the last time having been about two months prior. AR 61-62. She and her husband go to church weekly and also attend a weekly bible study group. AR 56-57. She also calls people or sends them cards or emails in conjunction with her "visiting teaching" duties with her church. AR 57. She uses the computer for about 30 minutes a week, usually just to do her visiting teaching emails and the typing does not bother her hands. AR 64. On one occasion since her alleged disability onset, about two years prior, she and her husband took a trip in their motor home to visit his family in Oregon, where they spent about 30 days. AR 58. On another occasion, Plaintiff drove three hours to visit consultative examiner, Dr. Ratiner. AR 59. Plaintiff testified that during the drive she "had to stop to take breaks." AR 60.

**Testimony of Vocational Expert**

Thereafter, the ALJ elicited the testimony of vocational expert Katie Macy Powers. AR 68. The VE testified that Plaintiff performed past relevant work as newspaper delivery driver, classified in

the Dictionary of Occupational Titles ("DOT") as a medium, semi-skilled job (DOT # 292.363-010); nurse assistant, a medium, semi-skilled job (DOT # 355.674-014); and cleaner/housekeeper, a light, unskilled job (DOT # 323.687-014). AR 71.

The ALJ then asked the VE to assume a hypothetical individual with Plaintiff's age, education, and work experience, who could sit, stand, and walk less than two hours each; could lift and/or carry less than ten pounds occasionally; could never engage in postural activities; and who would require numerous, unscheduled breaks. The ALJ testified that individual could not perform competitive, full-time work as it exists in the national economy. AR 71-72.

In a second hypothetical, the ALJ asked the VE to assume a person who could mentally perform simple, routine, repetitive tasks with no more than occasional public contact; and who could perform the exertional requirements of medium work. AR 72. The VE testified that individual could perform Plaintiff's past relevant job of cleaner/housekeeper. AR 72. Additionally, that individual could perform alternative jobs including unskilled, medium jobs of kitchen helper (DOT # 318.687-010); upholstery cleaner (DOT # 780.687-058); and washer (DOT # 599.687-030). AR 73.

In a third hypothetical question, a person who could lift and carry no more than ten pounds and could only occasionally use either hand for grasping, turning, or twisting objects would not be capable of any of the identified jobs. AR 74. A fourth hypothetical person, who is off-task for 15 to 20 percent of the day, would likewise be incapable of performing any of the identified jobs. AR 74. Similarly, missing two to three workdays per month could preclude all competitive work activity. AR 74.

**Medical Record**

The entire medical record was reviewed by the Court. AR 151-353. The medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 12-25. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since November 6, 2010. AR 14. Further, the ALJ identified arthritis and affective disorder as severe impairments. AR 14.

Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 16.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work including lifting and carrying fifty pounds occasionally and twenty-five pounds frequently; Plaintiff could stand and/or walk for six hours in an eight hour day with regular breaks; and sit for six hours in an eight hour day with regular breaks; she is limited to performing simple, routine, repetitive tasks; and she can occasionally, meaning no more than one third of the work day, have public contact. AR 17. The ALJ found that Plaintiff is able to perform her past relevant work as a cleaner/housekeeper. AR 23. Alternatively, Plaintiff could perform work as kitchen helper, upholsterer, and washer. AR 25. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 25.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 2002).

///

///

**DISABILITY STANDARD**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of no less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant bears the burden of proof to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In her opening brief, Plaintiff contends that the ALJ: (1) erred in evaluating the severity of her fibromyalgia; (2) improperly rejected the opinions of her mental health examining physicians; and (3) improperly rejected her credibility. (Doc. 11).

**DISCUSSION[3]**

**1.    The ALJ Properly Evaluated Plaintiff's Impairments at Step Two**

In her first issue, Plaintiff argues that the ALJ wrongly failed to categorize her "fibromyalgia" as severe. (Doc. 11 at 15). According to Plaintiff, three physicians including her treating physician, Ronald Bjarnason, D.O., examining physician Harjit Gogna, M.D., and examining rheumatologist Boris Ratiner, M.D., diagnosed Plaintiff with fibromyalgia. Plaintiff's argument, however, is unpersuasive.

At step two of the sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. at 140-41. An impairment is not severe if it does not significantly limit the claimant's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ, however, must consider the combined effect of all the claimant's impairments on his ability to function, regardless of whether each alone was

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

sufficiently severe. *Id.* Also, the ALJ must consider the claimant's subjective symptoms in determining severity. *Id.*

The step two determination is a "*de minimis* screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290; *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.921 (definition of a severe impairment). An impairment or combination of impairments can be found nonsevere only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Smolen*, 80 F.3d at 1290; SSR 85-28, 1985 SSR LEXIS 19; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (citing SSR 85-28, 1985 SSR LEXIS 19).

The Ninth Circuit has noted that fibromyalgia is a definite but elusive affliction:

> [F]ibromyalgia, previously called fibrositis, [is] a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. [citations omitted] Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. [citations omitted] Fibromyalgia's cause is unknown, there is no cure, and it is poorly understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis. [citations omitted]

*Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).

Plaintiff received a diagnosis of fibromyalgia from her treating physician, but little else appears from the record to affirm that diagnosis. Plaintiff testified that she was told that she had fibromyalgia by her treating physician (AR 240-241); she went to a specialist, rheumatologist Dr. Ratiner, who verified that she had fibromyalgia and noted that she had greater than 12 tender points—more than the requisite number of tender points required by the syndrome. AR 347. While Plaintiff relies on her fibromyalgia diagnosis, the mere fact that Plaintiff received a diagnosis of fibromyalgia does not mean that it is either severe or disabling. *See Sample v. Schweiker*, 694 F.2d 639, 642–643 (9th Cir.1982) (noting that the existence of a diagnosed disorder "is not per se disabling," so "there must be proof of the impairment's disabling severity").

The issue facing the Administrative Law Judge, here, was not whether Plaintiff had a fibromyalgia diagnosis, but rather whether there was substantial evidence to support a finding that her fibromyalgia was a severe impairment within the meaning of the Social Security Act. Despite

1 Plaintiff's assertions to the contrary, there was substantial evidence for the ALJ to determine that
2 Plaintiff's fibromyalgia was not severe. While Dr. Ratiner diagnosed Plaintiff with fibromyalgia, he
3 did not state the location of Plaintiff's trigger these points, nor did he state whether those tender points
4 were painful upon digital palpation. AR 347. Under the 1990 American College of Rheumatology
5 (ACR), a tender point is considered positive only if digital palpation with an approximate force of nine
6 pounds produces pain at the site. SSR 12-2P (S.S.A.), 2012 WL 3104869 at *3. Under the 2010 ACR
7 criteria, a patient must exhibit a history of widespread pain, six or more fibromyalgia signs, such as
8 fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety, or irritable bowel
9 syndrome. *Id.* Both sets of criteria require ruling out other possible diagnoses. *Id.*

As the ALJ noted, Dr. Ratiner did not state whether those trigger points were painful upon palpation. Dr. Ratiner also failed to identify six or more co-existing fibromyalgia signs. His examination therefore did not satisfy the specified criteria in SSR 12-2p, and the ALJ properly rejected Dr. Ratiner's diagnosis. To the extent that Plaintiff points to examining physician Dr. Gogna's examination report that diagnoses Plaintiff with fibromyalgia," Plaintiff's reliance on this finding is equally unpersuasive. While Dr. Gogna noted a "history of fibromyalgia," Dr. Gogna's full report opined that Plaintiff reports that "she was diagnosed by her doctor two years ago to have fibromyalgia" (AR 263), but upon examination Dr. Gogna noted that Plaintiff "did not seem to have any trigger points." AR 266. The ALJ was entitled to reject these vague diagnoses in favor of other evidence in the record. *See Cortes v. Commissioner of Social Sec.*, No. 14-CV-01017-SAB, 2015 WL 4557416, at * 11 (E.D. Cal. July 27, 2015) (ALJ properly discounted diagnosis of fibromyalgia where the trigger points referenced in opinion did not match the fibromyalgia trigger points); *Long v. Colvin*, No. 13-1461 AJW, 2014 WL 7382731, at *3 (C.D. Cal. Dec. 23, 2014) (ALJ properly noted that a note that a claimant as "positive for 18 trigger points" was not enough to satisfy the American College of Rheumatology criteria for fibromyalgia); *Anderson v. Comm'r of Soc. Sec. Admin.*, Case No. 8:11-1820-AJW, 2013 U.S. Dist. LEXIS 15611, 2013 WL 440703, at *6 (C.D. Cal. 2013) (ALJ permissibly rejected treating physician's diagnosis of fibromyalgia, where physician "omitted the generally accepted diagnostic findings from his evaluation").

The other evidence in the record that the ALJ considered in finding Plaintiff was not disabled—*i.e.*, her daily activities, conservative course of treatment, and objective physical findings—discussed in more detail below, were other valid reasons to reject Plaintiff's fibromyalgia diagnosis. AR 15-16; SSR 12-2p, 2012 SSR LEXIS 1 (stating fibromyalgia can be considered a medically determinable impairment only if the diagnosis "is not inconsistent with the other evidence in the person's case record"); *see also Martinez v. Astrue*, Case No. 2:11-10082-JPR, 2012 U.S. Dist. LEXIS 174092, 2012 WL 6093509, at *10 (C.D. Cal. 2012) (holding that ALJ properly accorded little weight to treating physician's conclusions regarding fibromyalgia because claimant's daily living activities consisted of dressing and bathing himself, shopping, running errands, walking, watching television, driving, shopping at the grocery store, and other activities).

Plaintiff's allegations of fibromyalgia are "not well supported" by the record and accordingly, the ALJ did not err in finding that Plaintiff's fibromyalgia was not a severe impairment. *See de Pulido v. Comm'r of Soc. Sec.*, 2012 WL 253327, at *9 (E.D. Cal. Jan. 25, 2012) (holding that the ALJ did not err in finding fibromyalgia non-severe).

**2.     The ALJ Properly Evaluated Plaintiff's Mental Impairment Evidence**

Second, Plaintiff challenges the ALJ's disability finding for failing to fully credit her examining physicians' opinions. (Doc. 11 at 18). More specifically, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting the opinions of her examining physicians Drs. Kalman and Gauch, who determined that Plaintiff suffered from moderate to severe mental limitations. In response to Plaintiff's argument, the Commissioner contends however, that the ALJ properly considered the weight of the medical evidence.

**A.     Dr. Kalman**

On March 20, 2013, Les P. Kalman, M.D., Psy.D., examined Plaintiff at her attorney's request. AR 339-42. Dr. Kalman noted that Plaintiff was cooperative, made good eye contact, got along with her family, and maintained friendships. AR 340-41. Dr. Kalman assessed Plaintiff with a GAF score of 50. AR 342. She was alert and properly oriented. AR 340. She could add, subtract, and multiply. AR 341. Her judgment was fair, her abstract thinking was intact, and she could properly interpret a proverb. AR 341. Dr. Kalman opined that Plaintiff had mild to moderate limitations caused by her

9

mental impairments, except that she was markedly limited in her ability to accept instructions and respond to criticism. AR 334-36. Dr. Kalman also opined that Plaintiff was incapable of handling even a low stress job and would miss work more than three times a month. AR 337-38.

The ALJ assessed Dr. Kalman's opinion as follows:

> The undersigned gives little weight to the psychological assessments of Dr. Kilman [sic] from March of 2013. During his evaluation of the claimant, Dr. Kilman [sic] assessed the claimant with major depression, panic disorder, generalized anxiety disorder, and adjustment disorder, depressed, secondary to medical condition and suggested the claimant had serious limitations in functioning. The undersigned finds Dr. Kilman's [sic] assessment of the claimant's functional limitations is inconsistent with the evidence of record. It appears Dr. Kilman [sic] relied primarily on the claimant's subjective complaints that have been found only partially credible. Furthermore, Dr. Kilman's [sic] determinations are inconsistent with the findings from her own evaluation of the claimant. Specifically, the claimant was noted to be oriented, alert, and cooperative with good eye contact, average intelligence, intact abstractions, fair insight and judgment, logical and goal directed though [sic] process, no looseness of association, no mood swings, no emotional liability, no hallucinations, and she could add, subtract, and multiply. The positive findings were limited to slow speech, delayed responses, and inability to do serial sevens. Additionally, the claimant's admission of managing her finances, going out alone, attending church, getting along with authority figures, and driving is not consistent with someone who has serious limitations in functioning. For all these reasons, the opinions of Dr. Kilman [sic] are given little weight.

AR 22.

**B.     Dr. Gauch**

On January 8, 2012, Gerardine Gauch, Psy. D., performed a consultative psychiatric examination. AR 256-62. Plaintiff reported that her pain was constantly 10 out of 10. AR 257. She reported once having a panic attack at her son's wedding. AR 256-62. Plaintiff reported experiencing an episode two years earlier in which she had an increase in panic attacks. AR 256-62. Her appearance, mental activity, stream of thought, and attitude were normal. AR 258. She reported that Gabapentin helped her sleep. AR 258. She denied current suicidal ideation, and there were no indications that she experienced hallucinations or delusions. AR 258. Her concentration was within normal limits, and her intelligence was average. AR 259. Her concentration, abstract thinking, and insight were within normal limits. AR 259. She reported doing chores such as vacuuming, cleaning the bathroom, and dusting. AR 260. She enjoyed the mountains, trees, flowers, sitting by water, and

visiting her grandchildren. AR 260. Plaintiff reported anxiety around others, including her grandchildren. AR 260. Dr. Gauch assessed her with a Global Assessment of Functioning (GAF) score of 55. AR 260; *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders*, 30-32 (4th ed. 1994) (DSM-IV). Based on the examination, Dr. Gauch opined that Plaintiff's symptoms were "within the moderate range." AR 261. Dr. Gauch concluded that Plaintiff had good abilities to understand and remember short instructions, accept instructions from a supervisor and respond appropriately, sustain an ordinary routine without special supervision, deal with the various changes in the work setting. AR 261. Dr. Gauch also concluded that Plaintiff had a fair ability to complete and remember detailed instructions, complete a normal workday, maintain concentration, and interact with coworkers. AR 261. Dr. Gauch also noted that likelihood of the claimant emotionally deteriorating in the work environment was fair. AR 261.

The ALJ summarized and evaluated Dr. Gauch's opinion as follows:

> The undersigned gives great weight to the opinions of psychological consultative examiner, Dr. Gauch. Upon face-to-face examination, Dr. Gauch assessed the claimant with Axis I diagnoses of depressive disorder, not otherwise specified, and panic disorder with agoraphobia. AR 21. The doctor determined the claimant's global assessment functioning (GAF) score was 55, indicating the claimant has moderate symptoms or moderate difficulty in social, occupational, or school functioning, but generally functioning pretty well, and has some meaningful relationships. Despite the claimant's allegations of disability, Dr. Gauch reported the claimant was alert, cooperative, pleasant, and oriented with normal concentration, ability, adequate concentration for conversation, normal insight and judgment, average intelligence, good eye contact, appropriate facial expression, appropriate thought content, dysthymic mood with congruent affect, logical coherent speech, and normal stream of mental activity. Based on these findings, Dr. Gauch opined the claimant had good ability to understand and remember very short and simple instructions, accept instruction from supervisor, and deal with various changes in the workplace. She had a fair ability to understand and remember detailed instruction maintain concentration and complete a normal workday/week without interruptions at a constant pace, and interact with coworkers; she had a fair likelihood of emotionally deteriorating in the work environment. Although the opinions Dr. Gauch regarding the claimant's functional limitations are generally reasonable in light of his examination of the claimant, the undersigned finds the opinions of the State agency psychological consultants are more consistent with the record as a whole. The undersigned has assessed specific function-by-function limitations stated herein taking into consideration the combined effects of the claimants impairments and given her generous consideration regarding her partially credible subjective complaints.

AR 22.

///

///

**C.     Legal Standards**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). The Commissioner may not reject the opinion of either an examining physician or a treating physician, even if contradicted, without specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). Further, the opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a physician if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871, 874–75 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–601 (9th Cir. 1999).

**D.     Analysis**

Here, the ALJ assigned little weight to the opinion of examining psychologist Dr. Kalman in favor of the contradictory opinion of the examining physician Dr. Gauch because Dr. Kalman's opinion: (1) was inconsistent with his own examination, (2) inconsistent with evidence as a whole, (3)

based on Plaintiff's subjective accounts, and (4) inconsistent with Plaintiff's activity level. AR 22. In doing so, the ALJ provided specific and legitimate reasons for rejecting Dr. Kalman's opinion.

In rejecting Dr. Kalman's opinion, first, the ALJ noted that Dr. Kalman's extreme limitations were inconsistent with the objective medical evidence in the record. Upon examination, Dr. Kalman assessed Plaintiff with a GAF score of 50, indicating that Plaintiff had serious symptoms. Dr. Kalman also indicated that Plaintiff had marked limitations in her ability to accept instructions and respond to criticism. AR 335. Based on his examination, Dr. Kalman opined that Plaintiff was incapable of even low stress jobs and would be absent from work more than three times a month. AR 337-38. Overall, Dr. Kalman opined that Plaintiff was chronically disabled and unemployable. AR 337.

In reviewing Dr. Kalman's opinion, the ALJ observed that Dr. Kalman's extreme limitations were inconsistent with the medical record. The ALJ noted that there is nothing in Dr. Kalman's report or the clinical findings to support the theory that Plaintiff cannot handle low stress jobs and would require more than three absences per month. AR 22. Dr. Kalman's examination notes demonstrated that during her exam Plaintiff was cooperative and made good eye contact. AR 340. She spoke slowly, had some memory and computation problems, but otherwise had an unremarkable mental status examination. AR 340-41. She was alert and properly oriented, denied hallucinations or delusions, and exhibited no loose associations, mood swings, or emotional lability. AR 341. Based on these findings, Dr. Kalman found that Plaintiff suffered from no more than moderate limitations except in her ability to accept instruction and respond to criticism from supervisors. In that area, Dr. Kalman found that Plaintiff suffered a "marked limitation." AR 345. Dr. Kalman's examination notes, however, do not support this finding. Instead, Dr. Kalman's examination findings demonstrate that Plaintiff has friends, gets along with family, and was cooperative throughout the examination. AR 341. The examination notes do not point to any justification for Dr. Kalman's findings that Plaintiff would be unable to accept supervisor instructions. It was proper for the ALJ to reject Dr. Kalman's opinion on this basis as an ALJ may discount an opinion that is not supported by a physician's own examination. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (an ALJ may dismiss a physician's opinion where it is not supported by the physician's examination performed the same day).

Second, the ALJ also properly noted that Dr. Kalman's opinion conflicted with the evidence as a whole. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). As discussed above, Dr. Kalman opined that Plaintiff had marked limitations in her ability to accept instruction and respond appropriately to criticism. AR 335. The evidence in record however established that Plaintiff admitted to following instructions well, she got along well with authority figures, and never lost a job because of her inability to deal with other people. AR 186- 87, 201-02. In further contradicting Dr. Kalman's opinion, Dr. Gauch found that Plaintiff had a good ability to accept instructions from a supervisor. AR 261. This was another reason for the ALJ to reject Dr. Kalman's opinion. The record simply does not support Dr. Kalman's opinion that Plaintiff had marked limitations in her ability to accept supervision.

Next, the ALJ discounted Dr. Kalman's opinion because it conflicted with Plaintiff's activities of daily living. This was an appropriate determination for the ALJ to consider. *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 601–02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations based, in part, on a claimant's reported activities of daily living that contradicted that conclusion). Plaintiff reported that she attended weekly church services, attended weekly Bible study, and watched her grandchildren daily. AR 56-57, 182, 185. She also took care of her dogs daily, and worked on projects to help her manage stress. AR 341. She could pay bills, count change, handle a savings account, and use a checkbook. AR 185. She went on vacation to visit family. AR 58. These activities are inconsistent with an opinion that Plaintiff suffered from disabling mental impairments. *See Mayes v. Massanari*, 276 F.3d 453, 457, 461 (9th Cir. 2001) (Plaintiff's activities such as watching television, straightening her house, shopping and washing laundry (with help), painting by numbers, working puzzles, listening to music, trying to exercise and sometimes going to eat with her boyfriend, "suggested that she could also work"); *see also Lockhart v. Comm'r of Soc. Sec*., No. 2:14-CV-1145-JAM-CMK, 2015 WL 5173049, at *7 (E.D. Cal. Sept. 3, 2015) (opinion's mental limitations conflicted with claimant's activities, such as shopping and attending church, which demonstrated "considerable mental capacity").

The ALJ further discounted Dr. Kalman's opinion because it was largely based on Plaintiff's subjective complaints which the ALJ found only partially credible. AR 22. The ALJ may disregard

medical opinions when they are based on discredited subjective complaints. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). "A physician's opinion . . . premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan*, 169 F.3d at 602. The ALJ explained that despite the alleged severity of Plaintiff's impairments, "she engaged in a somewhat normal level of daily activity and interaction." AR 18. Despite Plaintiff's complaints of disabling symptoms, the record revealed that Plaintiff had conservative treatment of prescription medication; and on one occasion she was noted to be down and depressed appearing. AR 19. "There was no evidence to suggest [Plaintiff] was ever hospitalized for psychiatric treatment or received any psychotherapy." AR 19. Based on these objective findings, the ALJ reasonably inferred that Dr. Kalman's overly restrictive opinions with respect to Plaintiff's limitations were erroneously based on Plaintiff's subjective complaints. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (ALJ is permitted to make inferences "logically flowing from the evidence."). This is a specific and legitimate reason for rejecting his medical opinion testimony.

Lastly, in challenging the ALJ's assessment of the mental health evidence, Plaintiff argues that the ALJ failed to fully adopt the opinion of her psychological consultative examiner, Dr. Gauch. (Doc. 11 at 19). The ALJ gave "great weight" to the opinion of Dr. Gauch as he had the benefit of examining the claimant "face-to-face." AR 21. Despite affording Dr. Gauch's opinion significant weight, Plaintiff argues that the ALJ failed to take into account Dr. Gauch's finding that Plaintiff "would further emotionally deteriorate in a work environment" in formulating Plaintiff's mental RFC. (Doc. 11 at 19). The Court disagrees.

As an initial matter, the ALJ was not required to individually reference each limitation noted in Dr. Gauch's report. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ does not need to discuss every piece of evidence when interpreting the record). Rather, the ALJ must detail "why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The ALJ's RFC, which included a restriction to simple, routine, and repetitive tasks, is consistent with Dr. Gauch's overall opinion.

The ALJ credited Dr. Gauch's opinion which largely found that Plaintiff suffered from moderate mental limitations. Dr. Gauch opined that Plaintiff's depression and anxiety were of moderate severity. AR 261. She assessed Plaintiff with a GAF score of 55, which is consistent with moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (revised 4th ed. 2000) ("DSM IV"). Based, in part, on Dr. Gauch's findings, the ALJ limited Plaintiff to performing simple, routine, repetitive tasks, with occasional contact with the public, which accounted for Dr. Gauch's opinion that she had moderate mental limitations. AR 17; s*ee Stubbs Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008); *Rogers v. Comm'r of Soc. Sec. Admin*, 490 F. App'x 15, 17-18 (9th Cir. 2012) (holding that a limitation to simple, routine, unskilled work accounted for the claimant's moderate difficulties in social functioning); *Henry v. Astrue*, No. 11-cv-8242-JPR, 2012 WL 4511677, at *12 (C.D. Cal. Oct. 2, 2012) (holding that the RFC limitations to simple work and brief and casual contact with co-workers accounted for claimant's moderate limitations in social functioning).

There are no other medical opinions in the record demonstrating that Plaintiff would deteriorate in a work environment and she would be unable to perform simple tasks in light of her moderate mental limitations. Therefore, consistent with the medical evidence, the ALJ appropriately accounted for Plaintiff's moderation limitations by limiting her to simple, routine, repetitive tasks, with occasional public contact. AR 17. *See O'Neil v. Colvin*, No. 1:14-cv-00432-BAM, 2015 U.S. Dist. LEXIS 127850, 2015 WL 5604318, at *14 (E.D. Cal. Sept. 23, 2015) (ALJ appropriately accounted for moderate mental limitations by limiting Plaintiff to simple, routine and repetitive tasks).

Ultimately, the ALJ weighed the mental health evidence which demonstrated that Plaintiff suffered from mild to moderate mental limitations. Based on those findings, the ALJ limited Plaintiff to "simple routine repetitive tasks" with occasional public contact. AR 17. This was an appropriate consideration as the ultimate determination of disability (i.e. whether a claimant can perform work in the national economy) rests solely with the Commissioner. 20 C.F.R. 416.927(e); *see also, See Tonapetyan v. Halter,* 242 F.3d 1144, 1148-49 (9th Cir. 2001) (ALJ not bound by opinion a physician with respect to ultimate determination of disability). These reasons were sufficient to reject Dr.

Kalman's opinion and adopt Dr. Gauch's opinion. Accordingly, the Court finds no error in the ALJ's assessment of Plaintiff' mental RFC.

Accordingly, Plaintiff is not entitled to a reversal or remand based upon this issue.

### 3. Credibility

Plaintiff also argues that the ALJ erred in rejecting the credibility of her subjective complaints. (Doc. 11 at 19). The Court disagrees.

#### A. Legal Standard

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

#### B. The ALJ Gave Sufficient Reasons to Reject Plaintiff's Subjective Testimony

First, the ALJ discounted Plaintiff's credibility because she performed a wide range of activities inconsistent with total disability. AR 18. An ALJ may properly consider a plaintiff's daily activities when discounting a plaintiff's subjective testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that his "later claims about the severity of his limitations were exaggerated"); *Mulligan v. Colvin*, No. 1:14-cv-1023-BAM, 2015 U.S. Dist. LEXIS 129474, 2015 WL 5687661, at * 5 (E.D. Cal. Sept. 25, 2015) (discounting credibility where plaintiff maintained his own personal hygiene, prepared meals, performed light household chores and yard work once or twice a

week, and shopped a couple times a month). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Here, the ALJ found that Plaintiff attended weekly church services, attended weekly Bible study, helped with church activities and would step in as a visiting teacher at church. AR 18. She went on vacation to visit family. AR 58. She participated in an exercise program (AR 307), cared for two dogs (AR 341), performed daily yoga (AR 345), went on walks (AR 182), and rode a bicycle. AR 182. The ALJ found that some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. AR 18. Based on her activities, the ALJ found that Plaintiff's credibility is diminished because her ability to participate in such activities undermined Plaintiff's allegations of disabling functional limitations. AR 18. This was a proper consideration for the ALJ.

Second, the ALJ cited Plaintiff's relatively conservative treatment history to support the adverse credibility finding. AR 19. Evidence of conservative treatment may diminish a Plaintiff's credibility and is sufficient reason to discount a claimant's testimony regarding the severity of impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Plaintiff's treatment for her physical and mental impairments consisted of routine visits to Dr. Bjarnason, and taking prescription medication. AR 236, 239, 241, 304, 307, 328. The ALJ correctly characterized Plaintiff's treatment as conservative in nature. *See Cochran v. Colvin*, No. EDCV 14-01165-JEM, 2014 WL 6977190, at *6 (C.D. Cal. Dec. 9, 2014) (ALJ properly considered claimant's conservative nonemergency treatment limited to medication and routine follow-up care for fibromyalgia and depression). Treatment notes from Plaintiff's treating physician, Dr. Bjarnason's, contain little examination findings and benign treatment methods. AR 236, 239, 241, 304, 307, 328. Plaintiff took limited prescription medication, but was told to switch to Tylenol and Dr. Bjarnson encouraged Plaintiff to play a musical instrument (AR 236), go walking (AR 239), volunteer, and exercise (AR 307) to help with her symptoms. Beyond prescription medication, Plaintiff received very little treatment. This was an appropriate reason to discount Plaintiff's credibility.

Finally, Plaintiff argues that ALJ overstates her inconsistent statements. (Doc. 11 at 20). The ALJ found that in 2011 Plaintiff admitted that she was able to prepare simple meals, and perform light household chores, however, in 2012; Plaintiff claimed that she was unable to prepare her own meals, or perform any household chores without assistance. The ALJ found that this inconsistency in reporting her daily activities of daily living diminished Plaintiff's credibility. AR 18. According to Plaintiff, "the ALJ makes too much of the minor differences in relative function, which are not meaningfully divergent from each other." (Doc. 11 at 21). The ALJ, however, did not err in relying on Plaintiff's inconsistent statements. There was nothing in the record to indicate that Plaintiff's symptoms increased between 2011 and 2012. AR 236, 256-62, 263-67, 307. Further undermining Plaintiff's statements in her July 2012 function report, just months earlier, in January 2012, she told Dr. Gauch that she did chores, including hand vacuuming her carpet, cleaning the bathroom, and dusting. AR 260. While Plaintiff disagrees, the inconsistency between her statements without sufficient objective support undercuts her credibility.

Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is supported by substantial evidence in the record, this Court does not second-guess that decision. *Fair*, 885 F.2d 597, 604 (9th Cir. 1989) (citation omitted). By considering Plaintiff's conservative treatment history, inconsistent testimony, and wide ranging daily activities, the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective complaints. Thus, the ALJ satisfied his burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Pamela Pauline Browning.

IT IS SO ORDERED.

Dated: **March 29, 2016**         /s/ *Barbara A. McAuliffe*
                                  UNITED STATES MAGISTRATE JUDGE